JUSTIN H. WILKES
1727½ Webster Avenue
Los Angeles, CA 90026
Telephone: (360) 362-8172
Email: justicewithjustin@gmail.com

Self-Represented

```
                              FILED
                     CLERK, U.S. DISTRICT COURT

                      AUG 18 2021

                     CENTRAL DISTRICT OF CALIFORNIA
                     BY: _____KMH_____ DEPUTY
```

NO-CV30

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| JUSTIN H. WILKES,<br><br>                    Plaintiff,<br><br>    v.<br><br>APPLE, INC.,<br><br>                    Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No.: 2-21-CV-06711-CBM-JPRx<br><br>**COMPLAINT FOR DAMAGES**<br><br>(1) RACE DISCRIMINATION<br><br>**<u>JURY TRIAL DEMANDED</u>** |

**<u>JURISDICTION AND VENUE</u>**

1.     This Court has subject matter jurisdiction pursuant to 42 U.S.C. §
2000e-5(f)(3) because each United States district court subject to the jurisdiction
of the United States shall have jurisdiction of actions brought under this title.
Federal question jurisdiction exists pursuant to 28 U.S.C. § 1331 because this
civil action arises under the laws of the United States.

2.     Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) and 42 U.S.C.
2000e-5(f)(3) because a substantial part of the events giving rise to this claim
occurred in this district and because Plaintiff would have worked in this district

COMPLAINT FOR DAMAGES - 1

but for the alleged unlawful employment practice by Defendant.

## INTRODUCTION

3.      This action is brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*, which prohibits employment discrimination based on race. This action alleges that Defendant discriminated against Plaintiff because of Plaintiff's race as Black or African American. Plaintiff seeks damages in an amount sufficient to compensate Plaintiff for Plaintiff's loss resulting from Defendant's conduct. Plaintiff hereby requests a jury trial on this matter.

## PARTIES

4.      Plaintiff JUSTIN H. WILKES is an individual and resident of Los Angeles County, California.

5.      Defendant APPLE, INC. is a California domestic corporation, with its principal place of business at One Apple Park Way, Cupertino, CA 95014.

**I.      Defendant Discriminated Against Plaintiff in Violation of Title VII of the Civil Rights Act of 1964**

6.      This is an action for damages based upon Defendant's practice of employment discrimination against Plaintiff in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

7.      Plaintiff is Black or African American.

8.      On or about December 1, 2020, Plaintiff applied for a legal position with Defendant. Defendant sought applicants to fill a Marketing and Publicity Counsel position in Los Angeles, CA.

9.      Defendant intentionally discriminated against Plaintiff as an applicant for the Marketing and Publicity Counsel position. Defendant misled Plaintiff as an applicant at the same time. Plaintiff, as a result, suffered severe mental and emotional distress.

10.     On September 29, 2020, Plaintiff reached out to Defendant's Corporate Recruiter regarding the Marketing and Publicity Counsel position with Defendant.

11.     On September 30, 2020, Defendant's Corporate Recruiter replied. Defendant's Corporate Recruiter mentioned to Plaintiff that Plaintiff's profile was currently under review. Defendant's Corporate Recruiter provided that:

> "You will hear back from me or from a member of my team to
> set up a time to speak further if there is a skills match at this

time!"

Plaintiff perceived Defendant's Corporate Recruiter's response to be a good sign.

12.     On or about December 1, 2020, Plaintiff applied for the Marketing and Publicity Counsel position.

13.     After submitting an application, Defendant's Corporate Recruiter followed up. Defendant's Corporate Recruiter noted to Plaintiff that "a new role just open[ed] up so glad we got connected before." Plaintiff was thrilled.

14.     Defendant's Corporate Recruiter thereafter scheduled an interview with Plaintiff on December 3, 2020.

15.     The day of the interview, on December 3, 2020, Plaintiff had the opportunity to speak with Defendant's Corporate Recruiter Donna Velasquez. Plaintiff thoroughly enjoyed Ms. Velasquez's conversation. Ms. Velasquez shared numerous insights with Plaintiff. Ms. Velasquez explained that Defendant's Corporate Recruiter had previously reviewed Plaintiff's resume with Defendant's Hiring Manager. Plaintiff was excited to hear the news.

16.     Ms. Velasquez noted that Ms. Velasquez "typically recruit[s] for finance and [recently] added a lot" to Defendant's company. Plaintiff was excited to hear this news as well. From Plaintiff's perspective, Plaintiff perceived that Ms. Velasquez's onboarding track record might continue with hiring Plaintiff on for the Marketing and Publicity Counsel role with Defendant.

17.     Ms. Velasquez then shared a wealth of information regarding Defendant's company. Plaintiff thought this to be another positive sign. In

Plaintiff's opinion, Ms. Velasquez's generosity was quite unusual at this stage in the hiring process. Due in large part to their discussion at this point, Plaintiff felt very good about Plaintiff's candidacy for the Marketing and Publicity Counsel position.

18.      Ms. Velasquez then scheduled a follow-up interview with Defendant's Hiring Manager on December 11, 2020.

19.      On December 11, 2020, Defendant interviewed Plaintiff a second time. At long last, Plaintiff spoke to Defendant's Hiring Manager. An industry veteran, well-rounded professional with experience supporting leading multinational companies and studios, Plaintiff was excited to make Defendant's Hiring Manager's acquaintance.

20.      During their interview, Plaintiff instantly felt comfortable speaking with Defendant's Hiring Manager. Plaintiff found Defendant's Hiring Manager's conversation to be of the utmost quality. The interview for the most part, as Plaintiff had not anticipated, proceeded with a light touch. Plaintiff was pleased to say the least.

21.      At one point in the interview however, things shifted slightly. Defendant's Hiring Manager made statements that placed Plaintiff at a disadvantage. Defendant's Hiring Manager asked Plaintiff questions that set Plaintiff up to fail. In those moments, Plaintiff felt blindsided. Although Plaintiff generally was impressed by their discussion otherwise.

22.      As the interview came to a close, Defendant's Hiring Manager requested

an update to Plaintiff's resume. Defendant's Hiring Manager instructed Plaintiff

to add the word "violin" to Plaintiff's Interests section. Plaintiff found this request to be unusual.

23.     Plaintiff had conflicting thoughts about being asked to make such a change. Plaintiff felt this to be a ploy to monopolize Plaintiff's time.

24.     Following their interview, Plaintiff did not hear from Defendant for some time.

25.     On December 23, 2020 however, Defendant reached out. Unexpectedly, Defendant rejected Plaintiff for the Marketing and Publicity Counsel position. Defendant explained that "[a]t this time the hiring team is not requesting next steps in the process. Please stay connected, if future opportunities arise I will certainly be keeping you in mind."

**II.** **The United States Equal Employment Opportunity Commission's San Jose Local Office Discriminated Against Plaintiff After Rejection from the Marketing and Publicity Counsel Position**

26.     Following Plaintiff's rejection, the San Jose Local Office of the Equal Employment Opportunity Commission ("EEOC") sought to deprive Plaintiff of due process.

27.     The EEOC attempted to prevent issuing a Notice of Right to Sue to Plaintiff.

28.     For example, the EEOC, on numerous occasions, harassed Plaintiff with reminder emails requesting that Plaintiff digitally sign a charge of discrimination through the EEOC Public Portal. These instances occurred on May 3, 2021, May 10, 2021, May 13, 2021 and May 17, 2021. On each occasion, Plaintiff visited the EEOC Public Portal to digitally sign the charge drafted on Plaintiff's behalf. The EEOC, however, did not provide a means for Plaintiff to digitally sign the document as instructed.

29.     The EEOC then, on another occasion, harassed Plaintiff with more reminder emails. On May 18, 2021 and May 25, 2021, the EEOC sent Plaintiff reminders explaining that a decision had been made regarding Plaintiff's charge of discrimination against Defendant. The EEOC encouraged Plaintiff to download and retain a copy of documents added to the EEOC Public Portal. Plaintiff visited the EEOC Public Portal to view the documents described. However, no documents were available.

30.     Then San Jose Local Office's Federal Investigator Cryselda Lott attempted to prevent issuing a Notice of Right to Sue to Plaintiff at the same time.

31.     On February 23, 2021, the EEOC scheduled an intake interview with Plaintiff. Plaintiff interviewed with Ms. Lott. During their conversation, Ms. Lott provided false information to Plaintiff with respect to obtaining a Notice of Right to Sue.

32.     Following their interview, Ms. Lott emailed Plaintiff a form to complete. Plaintiff discovered that completing the form was required to obtain a Notice of Right to Sue. Plaintiff found this to be unusual.

33.     Ms. Lott, on several occasions, harassed Plaintiff with reminder emails. On April 29, 2021, Ms. Lott requested three times that Plaintiff digitally sign a charge of discrimination through the EEOC Public Portal. The EEOC, however, did not provide a means for Plaintiff to digitally sign the document as instructed. On May 10, 2021, Ms. Lott followed up with a similar reminder.

34.     On May 3, 2021 and May 7, 2021, Plaintiff provided a separate signed charge of discrimination against Defendant to Ms. Lott. Ms. Lott did not issue Plaintiff a Notice of Right to Sue as a result. Plaintiff grew frustrated.

35.     On May 14, 2021, Plaintiff was forced to reach out to San Jose Local Office's District Director to compel the EEOC to issue a Notice of Right to Sue to Plaintiff. At that time, Plaintiff sent over a charge of discrimination against Defendant by email. Plaintiff, however, did not receive a Notice of Right to Sue

## CAUSE OF ACTION

**(For Race Discrimination in
Violation of Title VII of the Civil
Rights Act of 1964 by Plaintiff
Justin H. Wilkes against
Defendant Apple, Inc.)**

36.     Plaintiff repeats and realleges the foregoing allegations with the same force and effect as if fully set forth herein.

37.     Plaintiff believes and alleges that race was a motivating factor in Defendant's decision not to hire Plaintiff on December 23, 2020.

38.     Defendant discriminated against Plaintiff as an applicant for the Marketing and Publicity Counsel position. The San Jose Local Office discriminated against Plaintiff to follow.

39.     Defendant's conduct as alleged constitutes an unlawful employment practice in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*.

40.     Title VII of the Civil Rights Act of 1964 prohibits employment discrimination based on race. Section 703(a)(1), as codified in 42 U.S.C. § 2000e-2(a)(1) of the United States Code, provides that it is unlawful for an employer:

> "to fail or refuse to hire or to discharge any individual, or
>
> otherwise to discriminate against any individual with respect to
>
> his compensation, terms, conditions, or privileges of

employment, because of such individual's race, color, religion, sex, or national origin…"

Provided in section 703(a)(2), as codified in 2000e-2(a)(2) of the United States Code, it is impermissible for an employer:

> "to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex or national origin."

As previously described in section 703(a)(1), section 703(m) further emphasizes that:

> "Except as otherwise provided in this title, an unlawful employment practice is established when the complaining party demonstrates that race, color, religion, sex, or national origin was a motivating factor for any employment practice, even though other factors also motivated the practice."

41.     In Griggs v. Duke Power Co., 401 U.S. 424, 429 (1971), the United States Supreme Court explained that:

> "the language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate those discriminatory practices and devices which have fostered racially stratified job environments to the disadvantage of minority citizens."

42.     Griggs held that:

>  "What is required by Congress is the removal of artificial,
>
>  arbitrary, and unnecessary barriers to employment when the
>
>  barriers operate invidiously to discriminate on the basis of
>
>  racial or other impermissible classification." Id. at 431.

43.     The United States Supreme Court, in Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 254 (1981), defined the burden of proof under Title VII of the Civil Rights Act of 1964. Id. at 248. To establish a prima facie case of disparate treatment, Burdine provided that a:

>  "[] plaintiff must prove by the preponderance of the evidence
>
>  that [he] applied for an available position for which [he] was
>
>  qualified, [however] was rejected under circumstances which
>
>  give rise to an inference of unlawful discrimination." Id. at 253.

44.     In this case, Defendant's decision not to hire Plaintiff for the Marketing and Publicity Counsel position violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.

45.     As proscribed in section 703(a)(1), Defendant engaged in an unlawful employment practice when Defendant refused to hire Plaintiff for the Marketing and Publicity Counsel position on December 23, 2020 because of Plaintiff's race as Black or African American. Plaintiff's claim for discrimination arose at that point.

46.     Defendant impermissibly limited, segregated and classified Plaintiff as an applicant because of Plaintiff's race. Defendant's conduct deprived Plaintiff of the Marketing and Publicity Counsel opportunity.

47.     Race was a motivating factor for Defendant's employment practices against Plaintiff, as described in section 703(m).

48.     Similar to <u>Griggs</u>, Defendant fostered a racially stratified job environment to Plaintiff's disadvantage. Defendant created disturbances on several occasions during Plaintiff's hiring process. Defendant failed to assure equal employment opportunity in these instances. As a result, Defendant also failed to eliminate discriminatory practices likely motivated by the pandemic and the political climate of today.

49.     Defendant sought to create artificial, arbitrary, and unnecessary barriers that prevented Plaintiff, as a member of a racial minority, from being selected for the Marketing and Publicity Counsel position. The barriers imposed by Defendant, on numerous occasions, operated to invidiously discriminate on the basis of Plaintiff's race and, as a result, disproportionately impacted communities of color.

50.     Plaintiff has suffered and will continue to suffer substantial losses in earnings and job benefits. Plaintiff has suffered and will continue to suffer mental and emotional distress, pain and suffering, all to Plaintiff's damage in an amount to be proven at trial. Plaintiff was rendered sick, sore and disabled, both internally and externally, and has suffered numerous internal injuries, such as severe fright, shock, pain and discomfort. The exact nature and extent of said injuries are not known to Plaintiff, who will request leave of court to insert the same when ascertained. Plaintiff does not at this time know the exact permanence of said injuries, but is informed and believes, and thereon alleges, that some of Plaintiff's injuries are reasonably certain to be permanent in character.

51.    Defendant intentionally engaged in the unlawful employment practice

described against Plaintiff. Plaintiff, therefore, is entitled to an award of punitive

damages against Defendant.

52.    Plaintiff has suffered damages and seeks all remedies available at law and in

equity in an amount to be proven at trial.

## REQUEST FOR RELIEF

**WHEREFORE**, Plaintiff demands judgment against Defendant as follows:

1.    For affirmative action as may be appropriate.

2.    For each offense in an amount that may be determined by a jury.

3.    For a permanent injunction or other order to ensure full and fair

consideration from Defendant if Plaintiff seeks similar employment in the future.

4.    For compensatory damages, including back pay, lost wages and benefits,

emotional and mental distress, medical and related expenses, and other

pecuniary loss not presently ascertained according to proof in an amount to be

determined at trial.

5.    For punitive damages.

6.    For prejudgment interest on all amounts claimed.

7.    For any other equitable relief as the Court deems appropriate.

Plaintiff hereby demands trial by jury of all issues so triable.

Respectfully submitted,

DATED:      August 17, 2021                     .JUSTIN H. WILKES

By: _____

JUSTIN H. WILKES

EEOC Form 161-B (11/2020)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## NOTICE OF RIGHT TO SUE *(ISSUED ON REQUEST)*

To:  **Justin H. Wilkes**
**1727 1/2 Webster Ave.**
**Silver Lake, CA 90026**

From:  **San Jose Local Office**
**96 North Third Street**
**Suite 250**
**San Jose, CA 95112**

[ ]  *On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **556-2021-00250** | **Cryselda Lott,**<br>**Investigator** | **(408) 889-1954** |

*(See also the additional information enclosed with this form.)*

**NOTICE TO THE PERSON AGGRIEVED:**

**Title VII of the Civil Rights Act of 1964, the Americans with Disabilities Act (ADA), or the Genetic Information Nondiscrimination Act (GINA):** This is your Notice of Right to Sue, issued under Title VII, the ADA or GINA based on the above-numbered charge. It has been issued at your request. Your lawsuit under Title VII, the ADA or GINA **must be filed in a federal or state court WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

[ ]  More than 180 days have passed since the filing of this charge.

[X]  Less than 180 days have passed since the filing of this charge, but I have determined that it is unlikely that the EEOC will be able to complete its administrative processing within 180 days from the filing of this charge.

[X]  The EEOC is terminating its processing of this charge.

[ ]  The EEOC will continue to process this charge.

**Age Discrimination in Employment Act (ADEA):** You may sue under the ADEA at any time from 60 days after the charge was filed until 90 days after you receive notice that we have completed action on the charge. In this regard, **the paragraph marked below applies to your case:**

[ ]  The EEOC is closing your case. Therefore, your lawsuit under the ADEA **must be filed in federal or state court WITHIN 90 DAYS of your receipt of this Notice.** Otherwise, your right to sue based on the above-numbered charge will be lost.

[ ]  The EEOC is continuing its handling of your ADEA case. However, if 60 days have passed since the filing of the charge, you may file suit in federal or state court under the ADEA at this time.

**Equal Pay Act (EPA):** You already have the right to sue under the EPA (filing an EEOC charge is not required.) EPA suits must be brought in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

If you file suit, based on this charge, please send a copy of your court complaint to this office.

On behalf of the Commission

Enclosures(s)

**Rosa M. Salazar,**
**Director**

*(Date Issued)*

cc:

**APPLE**
**Kim Kwang, Employment Counsel**
**Apple Employment Law Group**
**Cupertino, CA 95014**

Enclosure with EEOC
Form 161-B (11/2020)

### INFORMATION RELATED TO FILING SUIT
### UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS     --     Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope or record of receipt, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was issued** to you (as indicated where the Notice is signed) or the date of the postmark or record of receipt, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

**PRIVATE SUIT RIGHTS     --     Equal Pay Act (EPA):**

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than 2 years (3 years) before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

**ATTORNEY REPRESENTATION     --     Title VII, the ADA or GINA:**

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

**ATTORNEY REFERRAL AND EEOC ASSISTANCE     --     All Statutes:**

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request within 6 months** of this Notice.  (Before filing suit, any request should be made within the next 90 days.)

***IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.***